FILED

97 APR -9 AM 9: 12

U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MILTON R. WHITAKER,** | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV-96-N-0423-S |
| | ] | |
| **BOBBIE J. REYNOLDS, in her official capacity as Tax Assessor of SHELBY COUNTY; and SHELBY COUNTY of Alabama,** | ] ] ] ] ] | |
| | ] | ENTERED |
| Defendant(s). | ] | APR 9 1997 |

## Memorandum of Opinion

### I.   Introduction

Milton Whitaker filed this age discrimination action against Shelby County and Bobbie Reynolds in her official capacity as the Tax Assessor of Shelby County on February 21, 1996. In December 1992, Mr. Whitaker, then 51 years old, applied for a position as an appraiser in the Shelby county appraiser's office. He contends that although he was qualified, the defendants refused to hire him in the "Appraiser I" position in favor of two, younger, less qualified applicants, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*

This case is currently before the court on the defendants' motion for summary judgment and the motions to strike filed by both parties. For the reasons stated herein, the motions to strike will be denied, and the motion for summary judgment will be granted in part and denied in part.

33

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c)

2

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11(1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury

3

could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. Discussion

The defendants contend that they are entitled to judgment as a matter of law because the position at issue is exempt from coverage by the ADEA. In addition, they also claim that Shelby County should be dismissed as a party-defendant because the county had no authority over the hiring in the Tax Assessor's office and was not named in the EEOC charge. The court will address each of these issues in turn.

### A. Exemption

The defendants first contend that "[a]s members of [the Tax Assessor's] personal staff, these positions are exempt from the coverage of the Age Discrimination in Employment Act (ADEA)." *Movant's Initial Submission* at 10. The personal staff exception in the ADEA, codified at 29 U.S.C. § 630(f), reads:

> The term "employee" means an individual employed by any employer except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or *any person chosen by such officer to be on such officer's personal staff*, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees

4

subject to the civil service laws of a State government, governmental agency, or political subdivision. The term "employee" includes any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country.

29 U.S.C. § 630(f) (emphasis added). The exception applies both to individuals who are discriminated against after they are hired, and those who are discriminated against by virtue of being refused employment. The focus is on the position held or sought, not the individual. *See e.g. EEOC v. Reno*, 758 F.2d 581 (11th Cir. 1985). Whether a plaintiff is an employee

is a question of federal, rather than state law; it is to be ascertained through consideration of the statutory language of the Act, its legislative history, existing federal case law, and the particular circumstances of the case at hand. State law is relevant insofar as it describes the plaintiff's position, including his duties and the way he is hired, supervised and fired.

*Reno*, 758 F.2d at 584 (citation omitted) (quoting *Calderon v. Martin County*, 639 F.2d 271, 272-73 (5th Cir. 1981)).[1]

Only once, *EEOC v. Reno*, has the Eleventh Circuit dealt with the personal staff exemption in the ADEA.[2] In *Reno*, the EEOC filed a complaint against Janet Reno, then State Attorney for the Eleventh Judicial District of Florida, alleging a violation of the ADEA by refusal to hire an applicant for an assistant state attorney position because of his age. *Id.* at 582. The trial court granted the defendant's motion to dismiss, concluding that Ms. Reno

---

[1] *Calderon* involved the personal staff exemption in Title VII. However, the *Reno* court adopted and applied the language to the ADEA stating, "[W]e find decisions under the analogous section of Title VII highly relevant to the issue before us today." *Reno*, 758 F.2d at 583-84.

[2] The defendants urge the court to apply the six factor test currently used by the fifth circuit, *See Gunaca v. State of Texas*, 65 F.3d 467, 470 (5th Cir. 1995 and *Teneyuca v. Bexar County*, 767 F.2d 148, 151 (5th Cir. 1985), instead of the four factor analysis used in *Reno*. This court is bound by *Reno*, however. It is not free to adopt a standard from another circuit that is different from that prescribed by the Eleventh Circuit.

did not employ any "employees" within the meaning of the Act, and that therefore the court lacked jurisdiction to hear the case. *Id.* at 583. The Eleventh Circuit agreed, specifically holding:

> Looking at this through Federal lenses, we agree with the district court's like conclusion that the assistant state attorney position at issue here falls within the federally prescribed personal staff exemption of the ADEA. The nature of the position--which invests the assistant state attorney with practically all of the duties, responsibilities and discretions of the state attorney--is such that the appointing state attorney must place a significant degree of trust in his assistants. As the Florida statutes indicate, the assistant state attorneys are given powers and responsibilities virtually co-extensive with those of the appointing state attorney. And to insure that these are fully carried out, the assistant state attorneys serve at the pleasure of the appointing state attorney. As a matter of Federal assessment, the position, as ordained by Florida statutes, is clearly one of policy-making level, involving one who necessarily advises, and acts upon, the exercise of constitutional and legal powers of the office of the state attorney.

*Id.* at 584 (citations omitted). The plaintiffs admit that in January 1993, persons hired for the position of Appraiser I "serve[d] at the pleasure" of the Tax Assessor. *Opponent's Responsive Submission* at 9. Accordingly, the court must only address the other three *Reno* factors.

The plaintiff first insists that the Appraiser I position does not have "practically all of the duties, responsibilities and discretions of the state attorney." *Opponent's Responsive Submission* at 9. He offers evidence that the Appraiser I position is merely an entry level position involving simply going out into the field and measuring and appraising real estate. *See Preston Affidavit* at 1. By contrast, the Tax Assessor, pursuant to Alabama law, also has

6

the duty to assess taxes on personal property,[3] receive claims of property exemptions and rule on those claims,[4] add[] penalties for failing to report improvements,[5] make[] demands against persons failing to make returns of property,[6] and assesse[] escaped real and personal property taxes and give[] notices of escape assessments.[7] In addition, unlike the Florida State Attorney position at issue in *Reno*, a position whose duties were delineated by Florida statute, here there are no Alabama Statutes that even mention the Appraiser I position. Lastly, the only evidence in the record indicates that appraisers do not make policy as did the Florida State Attorney in *Reno* did. *See generally Preston Affidavit*. Accordingly, three out of the four *Reno* factors are not present in the instant case.

Even after considering these factors, the court must take into account the legislative history of the Act. In *Teneyuca v. Bexar County*, 767 F.2d 148 (5th Cir. 1985), the Fifth Circuit, after doing such an examination, wrote:

> This Court's consideration of these factors must be tempered by the legislative history of this provision which indicates that the exception is to be narrowly construed. For example, the conference report on this legislation states: "It is the conferees [sic] intent that this exemption shall be construed narrowly." Furthermore, Senator Ervin, the sponsor of the original Senate amendment, agreed that the purpose of the exception was to "exempt from coverage those who are chosen by ... the elected official ..., and who are in a close personal relationship and an immediate relationship with him. Those who are his first line advisers." These comments led the Tenth Circuit to conclude: "Thus it would appear that Congress intended for the personal

---

[3] Ala. Code § 40-7-1.

[4] Ala. Code §§ 40-7-6 to 40-7-11.

[5] Ala. Code § 40-7-11.

[6] Ala. Code § 40-7-19.

[7] Ala. Code § 40-7-23.

staff exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official."

*Teneyuca*, 767 F.2d at 152 (citations omitted). There is no evidence in the record that the individuals who occupy the Appraiser I position in the Tax Assessor's office are the Tax Assessor's "first line supervisors." In fact, the organizational chart produced by the defendant, clearly shows there are at least two intermediate levels between Appraiser I and Tax Assessor. *Plaintiff's Exhibit 2*. The defendants contend that the position is only one level removed from the Tax Assessor and that "there are very few days on which an Appraiser does not come into Ms. Reynolds' office and close the door to discuss a personal problem with her." However, even if that were true, the evidence indicates that the Appraiser I position is nothing more than an entry level position, not in an "immediate relationship" with the Tax Assessor. Accordingly, using a narrow application as this court must, and considering the *Reno* factors outlined above, the personal staff exemption cannot apply to the instant case.

### B.   Shelby County as a Defendant

The defendants next contend that Shelby County is not a proper defendant in this case. Principally, they cite two reasons for this contention: 1) Shelby County did not have the authority to hire employees in the Tax Assessor's office; and 2) Shelby County was not named in the EEOC charge.

Alabama Code § 40-4-6 states:

The tax assessor is authorized to appoint deputies, and the acts of such deputies shall be recognized as his acts, and he shall be responsible for any loss sustained by any taxpayer or by the state or county by reason of any unlawful act done by any such deputies. Such deputies shall receive no

compensation for their services out of the state or county revenue, except in cases otherwise provided by law.

Ala. Code § 40-4-6. The defendants contend that this statute, taken together with the Eleventh Circuit's decision in *Terry v. Cook*, 866 F.2d 373 (11th Cir. 1989), entitles Shelby County to summary judgment.

In *Terry*, the plaintiffs were deputy sheriffs, clerks, investigators, dispatchers, jailers, and process servers under the former Sheriff of Lawrence County, Alabama, Dan Ligon. *Terry*, 866 F.2d at 374. On November 4, 1986, A. C. Cook, defeated Mr. Ligon. *Id.* On January 20, 1987, Mr. Cook took office and discharged each of the plaintiffs. *Id.* The plaintiffs sued Sheriff Cook, the Lawrence County Commissioners, and others. *Id.* The complaint alleged that the plaintiffs were fired, in violation of 42 U.S.C. § 1983, for failure to support Mr. Cook in his political race. *Id.* It also alleged that they were discharged on the basis of race, in violation of 42 U.S.C. § 1981. *Id.*

In addressing the defendants' motion to dismiss, the Eleventh Circuit held that the County Commission could not be liable. Specifically, the court held:

> Under Alabama law, the County Commission is authorized to "allow the sheriff to appoint a chief deputy and as many other deputies as are needed in the discretion of the county commission." 1979 Ala. Acts 85. We can find no authority in Alabama law granting the county commission the authority to hire and fire deputy sheriffs, nor have plaintiffs offered any. By its plain language, the statute authorizes the commission to determine only the number of deputies the sheriff may appoint. The authority of the county commission to determine the number of deputies the sheriff may appoint complements the sheriff's appointment power. As such, the Lawrence County Commission's ratification of Cook's proposal to replace all Ligon employees does not render it liable for Cook's refusal to reinstate the Ligon employees. Therefore, we AFFIRM the district court's dismissal of the county commissioners.

9

*Id.* at 379. Although the instant case involves ADEA claims and not § 1983 or § 1981, the reasoning used by the Eleventh Circuit in *Terry* is still appropriate. Like in *Terry,* the plaintiff here has presented no authority under Alabama law granting Shelby County the authority to hire and fire employees in the Tax Assessor's office. On the contrary, Ala. Code § 40-4-6 gives that authority to the Tax Assessor.

This court addressed this argument in its May 31, 1996, order denying the defendants' motion to dismiss. In that order, the court said that, while section 40-4-6 did give the Tax Assessor the authority to appoint deputies, "it does not grant exclusive authority. Furthermore, it is not clear whether the assessor position which is the subject of this case is considered a deputy under the statute." *Order of May 31, 1996* at 3. However, in that same order, the court made it clear that the issue might be appropriately revisited in a motion for summary judgment. *Id.* at 4. In its motion, the defendants have presented evidence that on April 27, 1992, the Shelby County Commission passed a resolution affirming that the Tax Assessor had the exclusive authority to hire and fire employees in his office.[8] Accordingly, all of the statutory evidence in the record indicates that Shelby County

---

[8] Resolution #92-04-27-10 is entitled "Personnel Rules Elected Officials Excluded" and states

Exclude the three (3) Departments headed by the elected officials (Probate, Tax Assessor, and Tax Collector) from the personnel rules applicable to the hiring and firing of their employees that Shelby County now operates under; that we do not separate them from the Bill that we are requesting the Legislature to pass, and that we do not give up the budgetary responsibilities that we have in those three (3) departments. The Probate Judge, Tax Assessor and Tax Collector are liable for the hiring and firing of the employees in their respective departments.

*Exhibit A to Defendants' Exhibit A.*

had no say in whether to hire Mr. Whitaker.[9] Therefore, consistent with *Terry*, they cannot be liable for the alleged hiring practices at issue in this action and so are entitled to judgment as a matter of law. Because of the court's holding on this issue, Shelby County's other grounds for summary judgment need not be addressed.

### C.   Instatement

One last issue regarding Shelby County must be addressed by this court. The plaintiff seeks "instatement" (*i.e.* an order forcing the defendants to place the plaintiff in the job for which he applied) as a remedy for the alleged discrimination in this case. If the plaintiff prevails in this lawsuit and instatement is ordered, the party that is *now* ultimately responsible for hiring and firing of employees in the Tax Appraiser's office must remain in this action for relief purposes.

On May 17, 1993, the Alabama Legislature passed Act No. 93-664, referred to by the parties as the Shelby County Civil Service Act. 1993 Ala. Acts 664. Ms. Reynolds testified in her affidavit that after the approval of that act, "I, as the Tax Assessor, did not have the exclusive authority to hire and fire employees in my office." *Reynolds affidavit* at 6. The act provides for two types of employees: 1) those in the classified service, and 2) those in the unclassified service. An unclassified employee is an employee-at-will, who never obtains permanent or regular employment status. 1993 Ala. Acts 664 sec. 2(36). Classified

---

[9] The plaintiff, has presented evidence that the individuals who were hired instead of the plaintiff had W-2s which listed the Shelby County Commission as their employer. *See Plaintiff's Exhibit 7 to Plaintiff's Exhibit 3* at 1; *Plaintiff's Exhibit 8 to Plaintiff's Exhibit 3* at 2. That fact, standing alone, is insufficient to create a genuine issue of material fact, however. It does nothing more than suggest that Shelby County has established a unified administrative system for the payment of salaries of the employees of its various officials, as well as its own employees.

service provides permanent employment to an individual after satisfactorily completing a probationary period. *Id.* at sec. 2(6). Vacancies in the "classified service" are filled by the "appointing authority" after the personnel director provides the appointing authority with a list of candidates. *Id.* at Sec. 11(h). "The county commission, tax assessor, tax collector, judge of probate, county manager, and the county department heads are appointing authorities within the meaning of this definition." *Id.* at Sec. 2(1). Accordingly, the Tax Assessor still ultimately fills all classified positions within that office. The act also provides that "[a]ppointments of individuals to full-time, part-time, or temporary positions in the unclassified service shall be granted to individuals which (sic) meet the requirements of the position established by the appointing authority and shall serve at the pleasure of the appointing authority and not retain permanent status as an employee." *Id.* at sec. 11(i)(3)e. Therefore, it seems that whether the Appraiser I position is classified or unclassified, the ultimate appointment comes solely from the Tax Appraiser, and not the county.[10]

## IV. Conclusion

Both motions to strike will be **DENIED**. As to defendant Shelby County, the motion for summary judgment will be **GRANTED**. In all other respects the motion for summary judgment will be **DENIED**.

---

[10] The question of whether the Personnel Board of Shelby County should be a party to this action has not been presented and, accordingly, is not considered here.

Done, this \_\_\_\_8th\_\_\_\_ of April, 1997.

*[signature]*

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE